1

2

3           UNITED STATES DISTRICT COURT

4          NORTHERN DISTRICT OF CALIFORNIA

5

6   NEW CINGULAR WIRELESS PCS, LLC,          Case No.  20-cv-07915-SI

7              Plaintiff,

8        v.                                   **ORDER GRANTING IN PART AND
                                             DENYING IN PART DEFENDANT'S
9   COUNTY OF MARIN CALIFORNIA,               MOTION TO DISMISS COMPLAINT**

10             Defendant.                     Re: Dkt. No. 22

11

12        On February 12, 2021, the Court held a hearing on defendant's motion to dismiss the

13  complaint.  For the reasons set forth below, the motion is GRANTED in part and DENIED in part.

14

15                              **BACKGROUND**

16        The following facts are drawn from plaintiff's complaint, which the Court treats as true for

17  the purpose of this motion to dismiss.

18        On November 11, 2020, plaintiff New Cingular Wireless PCS, LLC ("AT&T") filed this

19  lawsuit against defendant County of Marin (the "County") alleging three causes of action pursuant

20  to the Telecommunications Act of 1996 (the "TCA"), 47 U.S.C. §§ 253, 332.[1]  Dkt. No. 1, Compl.

21  ¶ 7.  Plaintiff alleges that the County's denial of its application (the "Application") for a use permit

22  to allow for construction and operation of a wireless communications facility violates Sections 253

23  and 332 of the Act because: (1) the County's denial effectively prohibited plaintiff from closing a

24

---

25        [1]  Section 332 prohibits a local government from denying an application for a
26  telecommunications facility where doing so would "prohibit or have the effect of prohibiting the
   provision of personal wireless services."  47 U.S.C. § 332(c)(7)(B)(i)(II).  Section 253 provides,
27  "[n]o State or local statute or regulation, or other State or local legal requirement, may prohibit or
   have the effect of prohibiting the ability of any entity to provide any interstate or intrastate
28  telecommunications service."  47 U.S.C. § 253(a).

United States District Court
Northern District of California

significant coverage gap in the provision of wireless service in violation of 47 U.S.C. §§ 253, 332(c)(7)(B)(i)(II); (2) the County's denial of the Application was not supported by substantial evidence contained in a written record in violation of 47 U.S.C. § 332(c)(7)(B)(iii); and (3) the County improperly regulated the placement, construction, and modification of personal wireless service facilities on the basis of environmental effects of radio frequency emissions in violation of 47 U.S.C. § 332(c)(7)(B)(iv).  *Id*. ¶¶ 57-80.  Plaintiff maintains that the proposed facility is consistent with the Marin County General Plan and Marin County Telecommunications Facilitates Policy Plan ("TFPP").  *Id*. ¶ 4.

In 2019, plaintiff AT&T began the process of submitting the Application to construct a 30-foot-tall bell tower situated at the rear entrance to the main church building (the "Proposed Facility") to be located on the property of St. Luke's Presbyterian Church (the "Church") at 10 Bayview Drive, San Rafael, Marin County, California.  *Id*. ¶ 1.  The tower served to address plaintiff's significant gap in its wireless service coverage in the vicinity of the Proposed Facility.  *Id.* ¶ 28.  Plaintiff demonstrated its significant service coverage gap in the County's administrative proceedings by submitting radio frequency propagation maps as exhibits to its Radio Frequency Statement.  *Id.* ¶ 30.  To close the gap, plaintiff proposed to install a wireless communications facility disguised as a bell tower attached to the rear entrance of the Church's main building.  *Id.* ¶ 32.

Marin County's TFPP establishes location policies and preferences for wireless communications facilities.[2] *Id.* ¶ 34.  Plaintiff alleges that it thoroughly investigated alternative sites and designs to ensure its Proposed Facility was the best available and least intrusive means for closing its service coverage gap.  *Id.* ¶ 33.  Plaintiff claims there are no industrial, agricultural, mixed use, open space, or recreational sites in the gap area.  *Id.* ¶ 35.  Plaintiff claims to have investigated all non-residential properties in the area, including commercial sites near the harbor, two elementary schools, the San Rafael Fire Station, and the Church.  *Id.*  Over time, plaintiff also claims to have

---

[2] Policy LU 1.4.2 provides a priority listing of locations for new wireless communications facilities, which establishes the following priority list in order from most preferred to least preferred: "1) industrial sites, 2) Commercial sites, 3) Public facilities sites, 4) Agricultural sites, 5) Mixed use sites (e.g., commercials and residential area), 6) Open space and recreational sites, 7) Residential sites."  Dkt. No. 1, Complaint, ¶ 34.

investigated two nearby water tanks – including a water tank suggested by the Planning Commission and Board of Supervisors – and the existing Verizon tower located far outside of plaintiff's gap area. *Id.*   Plaintiff's analyses of alternatives were submitted to the County in connection with the Application. *Id.* ¶ 33.

Finding the Church to be the least intrusive location to close its service coverage gap, plaintiff and the Church considered a total of six location and design candidates for the Proposed Facility – including a bell tower (or other architectural element) and a faux pine tree (often referred to as "monopine design"). *Id.* ¶ 36.  The Church, based on its analysis, disfavored monopine designs and authorized plaintiff to construct the Proposed Facility as a bell tower near a rear building entrance. *Id.*

In advance of the May 2020 Deputy Zoning Administrator ("DZA") Hearing, County Staff issued its Staff Report. *Id.* ¶ 37.  The report asked plaintiff to develop an alternative "taller and skinnier bell tower" design. *Id.*  Plaintiff prepared engineering drawings for this alternative bell tower design on an expedited basis. *Id.*

During the May 2020 DZA Hearing, plaintiff presented its Proposed Facility and alternative "taller and skinnier bell tower" design. *Id.*  Plaintiff alleges that despite County Staff's recommendation for approval, the DZA denied the application without considering the alternative "taller and skinner bell tower" design. *Id.* ¶ 38.  It is undisputed that plaintiff did not present any plans for a faux pine tree design at the DZA Hearing. *See generally* Dkt. No. 22 at 3 (County MTD); Compl. ¶¶ 38-40.  Plaintiff appealed the denial to the County Planning Commission. Compl. ¶ 38.

In mid-July, ahead of the appeal hearing scheduled for July 27, 2020, County Staff issued its Planning Commission Staff Report. *Id.* ¶ 39.  The Staff Report – for the first time – recommended that plaintiff develop, as an alternative design, a "mono-pine antenna structure located amongst the mature trees along the southern property line" of the Site. *Id.*  Plaintiff requested a continuance of the Planning Commission hearing to investigate and develop the recommended alternative monopine design. *Id.* ¶ 40.  The Planning Commission hearing was continued until September 28, 2020. *Id.*

Before September 28, 2020, plaintiff contacted County Staff to pinpoint the County's

United States District Court
Northern District of California

preferred locations for monopines on the Church's property.  *Id.* ¶ 41.  Once County Staff identified the preferred locations, plaintiff worked with the Church "to secure authority to place the Proposed Facility designed as a monopine and located per County Staff's recommendations."  *Id.*  Plaintiff then developed the requested designs, prepared simulated photographs of these two designs, and presented them ahead of the continued Planning Commission hearing.  *Id.*

During the September 28, 2020 Planning Commission hearing, multiple Planning Commissioners expressed approval of one of the monopine alternatives.  *Id.* ¶ 43.  However, plaintiff alleges that the Planning Commission heeded direction from County Staff not to consider any of the alternative designs.  *Id.*  The County justifies County Staff's actions, claiming that plaintiff failed to submit the "required technical studies for evaluation, including but not limited to photo-simulations, radio frequency report, and noise analysis."  Dkt. No. 22 at 4 (County MTD) (citing Ex. C, p.1, ¶5). The Planning Commission denied plaintiff's appeal and application of the bell tower design.  *Id.* Plaintiff appealed that decision to the County Board of Supervisors.  *Id.*

Ahead of the October 13, 2020 Board of Supervisors hearing, plaintiff submitted the engineering designs for the monopine alternatives.  Compl. ¶ 46.  Plaintiff also reiterated its willingness to construct any one of the four designs presented to the County.  *Id.*

At the October 13, 2020 Board of Supervisors hearing, the Board did not consider any of the alternative designs for the Proposed Facility and denied plaintiff's Application.  *Id.* ¶ 47.

On October 26, 2020, the County issued its written denial of plaintiff's Application in the form of the Denial Resolution.  *Id.*  The Denial Resolution specifies that the "revised [faux pine tree] projects the applicant submitted are not the subject matter of this appeal."  *See* Dkt. No. 22 at 4 (County MTD) (citing Ex. C, p.1, ¶6).  The Denial Resolution further explained that the Board is denying the proposed bell tower design because "the project…would cause degradation to [certain] views…due to poor design and placement.  Specifically, the proposed development would be visually intrusive and adversely affect views from surrounding properties."  Compl. ¶ 47.

## LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader

4

United States District Court
Northern District of California

is entitled to relief," and a complaint that fails to do so is subject to dismissal pursuant to Rule 12(b)(6). Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

In reviewing a Rule 12(b)(6) motion, courts must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the non-moving party. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, courts are not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).

It is well-established that the existence of a case and controversy is a prerequisite for the exercise of federal judicial power under Article III. One important element of the "case" or "controversy" is satisfying the ripeness doctrine, *see Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n. 18 (1993) (stating that the doctrine derives from both Article III and from prudential reasons for refusing to exercise jurisdiction), which determines when a party may go to court. Ripeness is, essentially, a question of timing.

If a court dismisses a complaint, it must decide whether to grant leave to amend. The Ninth Circuit has repeatedly held that "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations and

1   internal quotation marks omitted).

2

3                                       **DISCUSSION**

4   **I.      Plaintiff's Claims Are Ripe Under 47 U.S.C. § 332(c)(7)(B)**

5          Plaintiff seeks relief based on the County's denial of its Application "for construction and

6   operation of a wireless communications facility designed as a 30-foot-tall bell tower situated at the

7   rear entrance to the main church building."  Compl. ¶ 1.  The County contends that plaintiff's

8   complaint is unripe as a matter of law because the Application was not "final" for purposes of a

9   federal court challenge.  Dkt. No. 22 at 1 (County MTD).  The County argues that a local government

10  action is only "final" when "the plaintiff has [(A)] taken all administrative steps available to it and

11  [(B)] pursued less intensive alternatives," which it asserts plaintiff failed to do.  *Id.*

12         In relevant part, the TCA provides, "[a]ny person adversely affected by any *final action* or

13  failure to act by a State or local government or any instrumentality thereof that is inconsistent with

14  this subparagraph," governing local regulation of the placement of personal wireless service

15  facilities, may "commence an action in any court of competent jurisdiction."   47 U.S.C.

16  § 332(c)(7)(B)(v) (emphasis added).  While the Ninth Circuit has not considered the meaning of

17  "final action" under the TCA, the Seventh and First Circuits have provided some guidance.  *See*

18  *Sprint Spectrum, L.P. v. City of Carmel*, 361 F.3d 998, 1004 (7th Cir. 2004) (finding plaintiff's claim

19  against City unripe because Sprint still needed "to seek a special use permit" and "subdivision plat

20  approval from the [City's] Plan[ning] Commission" – leaving it with "further recourse before the

21  local zoning board"); *Omnipoint Holdings, Inc. v. City of Cranston*, 586 F.3d 38, 47 (1st Cir. 2009)

22  (finding plaintiff's claim ripe because the zoning board had concluded its decision-making process

23  and could take no further action).

24

25         **A.      Performance of All Available Administrative Steps**

26         The "well settled rule in administrative law is that a 'final agency action' is one that 'mark[s]

27  the consummation of the *agency's* decisionmaking process.'"  *Omnipoint,* 586 F.3d at 46 (emphasis

28  in original).  If the possibility remains that the project would still be approved, the claim is unripe.

United States District Court
Northern District of California

                                              6

*Sprint Spectrum*, 361 F.3d at 1004.   However, when a "zoning board ha[s] concluded its decisionmaking process . . . and could take no further action," "the zoning board's decision [i]s final." *Omnipoint*, 586 F.3d at 47.   Hence, a party must "exhaust all administrative options available to it before pursuing a TCA claim in federal court."   *Sprint Spectrum*, 361 F.3d at 1004.   A "final determination" by an administrative agency means that the agency "rendered its last word on the matter."   *Omnipoint*, 586 F.3d at 46.

The County contends that plaintiff has not taken all available administrative steps because plaintiff failed to pursue the alternative faux pine tree design before filing this suit.   Dkt. No. 22 at 1 (County MTD).   As such, the County contends it was never given the opportunity to "[a]rrive at a final, definitive position regarding" plaintiff's allowable use of the property.   *Id*. at 8 (citing *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985)).   Plaintiff responds, "[a]s set out clearly in Paragraph 1 of [its] Complaint," this action is only challenging the "denial of [its] application for the bell tower design."   Dkt. No. 23 at 2 (Opp. To County MTD).   Plaintiff asserts that because the "bell tower design was denied by the County at each level of the administrative process, the decision is now final."   *Id*. at 5.

The Court concludes that plaintiff is challenging a final decision denying plaintiff's Application to construct the bell tower design.   While plaintiff never perfected a new application to the County for one of its faux pine-tree designs, the bell tower design was denied by the County at each level of the administrative process.   Unlike *Sprint Spectrum*, where the carrier "still had further recourse before the local zoning board" because it "had not [yet] completed the multi-level application process with the City, and the City's various departments or bodies had not yet made a final determination on the application," there is no next level of review for plaintiff to appeal to and the decision of the County regarding the bell tower design is final.   *Sprint Spectrum*, 361 F.3d at 1004; *cf. Glob. Tower Assets, LLC v. Town of Rome*, 810 F.3d 77 (1st Cir. 2016) (though "Planning Board may have rendered a decision that represents its definitive judgment," that decision was still subject to an appeal to the Board of Appeals," and thus decision was not final and federal claim was not yet ripe)).

United States District Court
Northern District of California

7

United States District Court
Northern District of California

### B.      Less Intensive Alternatives

The County asserts that plaintiff "failed to fully explore [a less intensive idea] through the County's administrative procedures (i.e. submitting a new application for the faux pine tree design, as it was told it could do)."  Dkt. No. 22 at 9 (County MTD).  The County argues that while plaintiff "touts that it presented the faux pine tree designs to the Planning Commission," those faux pine tree plans "were not denied in the Denial Resolution because the subject of the appeal to the Board was the 33-foot-bell tower design." *Id*.  The County concludes, "[h]ad AT&T filed a new application for one of its faux pine tree ideas (or some other less intensive proposal than the bell tower design), it would have been afforded a de novo review," which could have "resulted in approval of the project." *Id*.

The County's argument relies heavily on *MacDonald, Sommer & Frates v. Yolo Cty.*, 477 U.S. 340 (1986), in which the Supreme Court found the plaintiff's taking claim unripe because the County's refusal "to permit the intensive development desired by the landowner [did] not preclude less intensive, but still valuable development." *MacDonald*, 477 U.S. at 347.  The County contends that although *MacDonald* is a taking case, it is nevertheless relevant to determining "what constitutes . . . a final action" under the TCA.  *See Sprint Spectrum*, 361 F.3d at 1003 (citing *MacDonald*).

In *MacDonald*, the Court specified that "a final and authoritative determination" is important given the specific "nature of a regulatory takings claim." *MacDonald,* 477 U.S. at 348.  The Court continued that it could not "determine where a regulation has gone 'too far' unless it knows how far the regulation goes."  *Id*.  The Court held, "[a]bsent final and authoritative determination[s] by the County" as to how it would apply certain regulations, "Court[s] cannot determine whether a taking has occurred."  *Id*. at 340.  While the Court does mention "less intensive alternatives," it does so in passing, stating that "[w]ithout knowing the nature and extent of [alternative] permitted development[s], [it] cannot adjudicate the constitutionality of the regulations that purport to limit it." *Id*. at 351.  Unlike *MacDonald*, where the "appellant still ha[d] yet to receive the Board's 'final, definitive position regarding how it will apply the regulations at issue to the particular land in question,' and "the holdings of both courts below leave open the possibility that some development

8

will be permitted," here AT&T challenges a final decision denying the Application to build the bell tower design. *Cf. Sprint Spectrum*, 361 F.3d at 1004 (holding the plaintiff's claim was not ripe, and citing *MacDonald*, because the challenged BZA decisions "merely map a procedural route that Sprint must take in order to proceed with its project. It must submit a plan to the commission and apply for a special use permit, neither one of which Sprint has done.").

## II.     Plaintiff Does Not State A Claim Under 47 U.S.C. § 253

The County contends that plaintiff cannot state a claim under 47 U.S.C. § 253 in the first cause of action.  The County argues that Section 253 is "designed to offer solely 'facial challenge' relief from local *regulations*, not 'as applied' challenges to individual local zoning *decisions*."  Mtn. at 10 (emphasis in original).  Because plaintiff "has cited no Marin County ordinance, regulation or guideline that has the effect of categorically prohibiting the provision of telecommunications service," the County asserts that plaintiff's Section 253 claim is subject to dismissal under Fed. R. Civ. P. 12(b)(6).  *Id.*

Section 253 provides, *inter alia*, that "[n]o State or local statute or regulation, or other State or local requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service."  47 U.S.C. § 253(a).  While Section 253 "provides a cause of action against *local regulations*, [S]ection 332 gives a cause of actions against *local decisions*."  *Verizon Wireless (VAW) LLC v. City of Rio Rancho, NM*, 476 F. Supp. 2d 1325, 1337 (D.N.M. 2007) (emphasis in original); *see also Sprint Telephony PCS, L.P. v. Cty. of San Diego*, 490 F.3d 700, 713 (9th Cir. 2007) (differentiating between the use of Section 332 for "challenges to individual zoning decisions" and Section 253 for a "facial challenge to an entire ordinance"), *aff'd in relevant part*, 543 F.3d 571 (9th Cir. 2008) (en banc); *see also e.g.*, *NextG Networks of Cal., Inc. v. Cty. of Los Angeles, Cal.*, 522 F. Supp. 2d 1240 (C.D. Cal. 2007) (evaluating a facial challenge to a zoning ordinance under Section 253 to determine whether the County's zoning ordinance erected a barrier to entry into the telecommunications market).

Plaintiff's complaint alleges that the County's denial violates both 47 U.S.C. § 253 and § 332 because the denial "effectively prohibits" plaintiff from providing wireless services.  Compl.

United States District Court
Northern District of California

¶ 68.  Plaintiff is not bringing a challenge to a  Marin County ordinance, regulation, guideline, or legal requirement that has the effect of prohibiting the provision of telecommunication services in violation of Section 253.  Instead, plaintiff is challenging an individual zoning decision, specifically the denial of the Application.  Plaintiff's opposition relies on an FCC ruling to assert that the Court should broadly interpret Section 253 to encompass challenges to zoning applications.  *See In the Matter of Accelerating Wireless Broadband Deployment by Removing Barriers to Infrastructure Inv.,* 33 F.C.C. Rcd. 9088, ¶ 94 (2018), *aff'd in relevant part*, *City of Portland v. United States*, 969 F.3d 1020 (9th Cir. 2020).  However, that FCC ruling addressed whether a municipality acts in a regulatory capacity – and thus is subject to section 253 – when it authorizes and sets terms for wireless infrastructure deployment in public rights-of-way because "contracts and other arrangements between a state or local government and a party engaged in wireless facility deployment" constitute "legal requirements" under section 253.  *See In the Matter of Accelerating Wireless Broadband Deployment by Removing Barriers to Infrastructure Inv.,* 33 F.C.C. Rcd. 9088, ¶ 94.

Here, plaintiff is not challenging any "legal requirement" imposed by the County, but rather the denial of the Application.  In light of the authority discussed above, and in the absence of any authority holding that a plaintiff may challenge the denial of a zoning application under Section 253, the Court concludes that plaintiff may not proceed under Section 253 in the first cause of action.[3]

///

///

---

[3] Plaintiff may still proceed under Section 332 in the first cause of action.  The Court also notes that at the hearing, plaintiff's counsel stated he was not aware of any difference in the form of relief available under Section 253 versus Section 332.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## CONCLUSION

Accordingly, defendant's motion to dismiss the complaint is GRANTED IN PART and DENIED IN PART.

**IT IS SO ORDERED**.

Dated: February 19, 2021

_____

SUSAN ILLSTON
United States District Judge

11