UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEW CINGULAR WIRELESS PCS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF MARIN, CALIFORNIA,<br><br>Defendant. | Case No. 20-cv-07915-SI<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 42, 43 |

On October 1, 2021, the Court held a hearing on the parties' cross-motions for partial summary judgment regarding Counts II and III. For the reasons set forth below, the Court GRANTS defendant's motion and DENIES plaintiff's motion.

**BACKGROUND**

**I.     Factual background**

Plaintiff New Cingular Wireless PCS, LLC ("AT&T") seeks declaratory and injunctive relief based on the County of Marin's denial of a use permit to construct a wireless communications facility in San Rafael, California. AT&T contends that it has been trying for a considerable time to obtain County approval of a site that would improve wireless services in this area of Marin County, and that the facility is needed to address a significant gap in AT&T's wireless service coverage. AT&T also claims to have investigated alternative sites and designs to ensure that its proposed facility was the best available and least intrusive means for closing its service coverage gap.

On February 12, 2020, AT&T[1] submitted an application ("the Application") for a use permit

_____

[1] The application was submitted by Epic Wireless, LLC on behalf of AT&T Wireless.

to construct a 12'x12' wide by 33'5" tall wireless communications facility disguised as a bell tower (the "Proposed Facility"), to be situated in a residential neighborhood on the property of St. Luke's Presbyterian Church at 10 Bayview Drive, San Rafael, California.  *See*, *e.g.*, Dkt. No. 41-3 at 1-2 (Staff Report, referring to the application).  The Proposed Facility would house and camouflage antennas, relay radio units and associated equipment cabinets.  *Id*.  AT&T submitted an Alternative Sites Analysis in connection with its Application, which addressed six other sites that AT&T had considered and explained why each of those sites was infeasible or impractical.  Dkt. No. 41-19.  In order to complete the application process, AT&T put up story poles of the Proposed Facility at the Bayview Drive site.  *See* Dkt. No. 41-3 at 2, 51-59 (photos of story poles).

In advance of the Marin County Deputy Zoning Administrator ("DZA") hearing, County Staff issued a report.  Dkt. No. 41-3.  The Staff Report described the project setting as follows:

> The project site is a 2.3-acre lot within a residential zone.  The site contains a 3,840 square foot church and a detached 4,520 square foot two-story sanctuary building. The fellowship hall, which measures approximately 21 feet above grade, features an approximately 40-foot tall church steeple that narrows as it soars up to the sky and is capped with a cross.  The peaked roof of the sanctuary building measures approximately 18 feet eight inches above the surrounding grade.  Development in the area is with residential uses, with occasional open spaces punctuating the otherwise minimally developed area.  There is a grove of mature Oak, Eucalyptus, and Bay trees to the west and southwest, with other trees planted along the entire perimeter of the church.  No tree removal or significant grading would be required to construct the project.
>
> Topography in the area up-slopes from the south to the north, from the San Rafael Bay to the north to the project site and beyond.  The project site is at a lower elevation than the adjacent residences to the north, northwest, and northeast.  Available views are both immediate and distant in nature, including a view of the San Rafael Bay, the San Rafael Bridge, distant cities, distinctive geologic features such as the East and West Marin Islands, Marin Islands National Wildlife Refuge, hillside terrain, wooded canyons, ridges or bodies of water.  And because the existing development of the church site has taken considerable efforts to preserve the views, the properties to the north, northwest, and northeast, enjoy varying degrees of views.

*Id*. at 2.  The Staff Report stated that in response to a public hearing notice about the project, "the Community Development Agency received written objections from nearby residences and an e-mail in support of the project.  The objections were based mostly on health concerns related to radiofrequency emissions (RF), design compatibility, and impacts to views."  *Id*.  The Staff Report concluded that "the structure would be visually intrusive with a design that is incompatible with the existing buildings."  *Id*. at 4.  The Report stated,

2

The story-poles demonstrate that the proposed bell tower would be prominently visible from Bayview Drive and the residences to the north, unlike the narrower church steeple located a mere few feet away from the proposed structure. When viewed closer from the residences, as evidenced in the photographic images submitted by the neighbors in opposition to the project, intrusions into views are even more significant. The closer the residence is, the greater impacts on views. Degradations to views only occur above the existing roofline of the church building, which reaches a maximum height of 18 feet eight inches above surround grade. The introduction of the 12-foot by 12-foot wide tower in an otherwise minimally developed area would affect the visual character and quality of the site, and its surroundings as viewed from offsite locations of the nearby residential properties and the public rights-of-way.

*Id*. at 8. The Staff Report recommended conditional approval of a "substantially modified" alternative that was either "affixed to the church steeple" or alternatively "the width of the proposed structure should be reduced to no more than four feet by four feet at any point beyond 18 feet eight inches above the surrounding grade, essentially mimicking the church steeple found on the property." *Id*. at 4, 9.

On the day of the DZA hearing, AT&T submitted a revised project consisting of a 4'x4' wide by 44' tall "clock tower" design.[2] Dkt. No. 41-10 at 2-3 (DZA Denial Resolution No. 20-121); Dkt. No. 41-11 (revised project submitted "this morning before the hearing"); Dkt. No. 41-50 at 4 (transcript of Board of Supervisors hearing in which staff stated, "[A]t the date of the [DZA] hearing, the applicants submitted a revised project to the DZA at the hearing within half an hour notice. At the hearing, the Deputy Zoning Administrator received – acknowledged the receipt of the revised application, and she noted it was [an] incomplete submittal, that there wasn't enough information to analyze the revised project" including "technical studies").

The DZA denied the Application. The DZA Denial Resolution stated that that the Radio Frequency Emissions Compliance Report submitted by the applicant showed that "the proposed facility would be consistent with the RF emissions policies in the TFPP" and that it would allow AT&T to provide improved services in areas where it presently has limited wireless coverage. *Id*. at 1, 3. However, the DZA denied the Application, finding that both the Proposed Facility and the alternative 4'x4' wide by 44' tall design were inconsistent with the Marin County

---

[2] According to AT&T, the Church wished to maintain the aesthetics of its existing steeple and disfavored any designs that would alter the steeple design or appearance, and thus AT&T did not pursue the option of affixing the facility to the steeple. *See* Dkt. 41-37 at 36, ¶ 3.

United States District Court
Northern District of California

Telecommunications Facilities Policy Plan VIS.2.1 ("TFPP")[3] because, *inter alia*, "both alternatives result in visual impacts." *Id*. at 3.  The DZA Denial Resolution stated that the Proposed Facility was also incompatible with other aspects of the TFPP as well as the Marin County Code.[4]  *Id.* at 2-5.  In addition, the Resolution stated that "appellants failed to evaluate other design alternatives, for instance, a mono-pole structure or attachment to the existing church steeple as options that would potentially provide the least intrusive design." *Id.* at 3.

Plaintiff filed a timely appeal of the denial by the DZA to the County Planning Commission. Dkt. No. 41-17 at 12 (Petition for Appeal of DZA Decision); Dkt. No. 43 at 4.  The appeal hearing was scheduled for July 20, 2020.

In mid-July prior to the appeal hearing, County Staff issued its Planning Commission Staff Report.  Dkt. No. 41-16 (Staff Report to Planning Commission).   The Staff Report recommended that plaintiff develop, as an alternative design, a "mono-pine antenna structure located amongst the mature trees along the southern property line" of the site.  *Id.* at 3.  Plaintiff requested a continuance of the Planning Commission hearing to investigate and develop the recommended alternative monopine design.  Dkt. No. 42 at 4.  The Planning Commission hearing was continued until Monday, September 28, 2020.  *Id.*

On Thursday evening, September 25, 2020, plaintiff submitted additional information in support of its appeal, including "photosims" (simulated photographs) showing a proposed monopine

---

[3]  Marin County's TFPP establishes location policies and preferences for wireless communications facilities.  *See* Marin County, Cal., TFPP, The Marin County Community Development Agency (1998) (hereinafter "TFPP").  Available at https://www.marincounty.org/-/media/files/departments/cd/planning/currentplanning/publications/landuseplan/telecommunications_facilities_policy_plan_1998.pdf.
The TFPP "provides guidance for allowing the efficient and effective development of telecommunications facilities while protecting . . . land uses of Marin County," and includes, for example, objectives and policies for land use, visual and aesthetic compatibility, electromagnetic field (EMF) emissions, public safety, facility operation, and the review process. *Id.* at 1-22. TFPP VIS.2.1 states that "The sites of new telecommunications facilities or substantially modified ones should be selected to minimize potential visual effects."

[4] The Marin County Municipal Code (MCC) provides criteria for land use and development. Marin County, Cal., Municipal Code, Chapter § 22.42 (2021) (hereinafter "MCC").  Available at https://library.municode.com/ca/marin_county/codes/municipal_code?nodeId=TIT22DECO_ARTIVLAUSDEPE_CH22.42DERE_22.42.060DEFI.

United States District Court
Northern District of California

4

design from various angles.  Dkt. No. 41-29 at 19-33.  It is undisputed that AT&T did not submit a completed application of the monopine design and that the September 25 submission did not include "technical studies for evaluation."  Dkt. No. 41-45 at 1.

During the September 28, 2020, Planning Commission hearing, County Staff recommended that the Planning Commission not consider the alternative monopine design because it was incomplete.  In response to a question from the Chairperson about "what we are considering today and what we can and what is the latitude that we have today, if any," the staff member responded,

> Yeah.  You have broad latitude.  It's a de novo hearing, and if your Commission decides that you want to completely redesign the project and have a monopine instead and provide a specific location for that and a specific height, you're well within your rights to do that.
>
> We don't recommend it.  We think that it's a better practice if an applicant wants to radially redesign a project for them to go through the typical process of providing a new application to us, having us go through the standard process of providing that information to the public and to other agencies, rather than a sort of last-minute change to a project design.

Dkt. No. 41-49 at 13:6-25 (Planning Commission hearing transcript).  The Planning Commission did not consider the incomplete monopine design.

The Planning Commission denied plaintiff's appeal.  Dkt. No. 41-31 at 8 (Denial Resolution No. PC20-011).  The Denial Resolution addressed AT&T's bases for appeal.  As to AT&T's objection that the DZA denied the application based on "misplaced concerns about radiofrequency emissions," the Denial Resolution stated, "Although there was a fair amount of public comment related to potential health concerns as a result of prolonged exposure to electromagnetic field (EMF) and RF due to the project, the Deputy Zoning Administrator did not deny the project on the basis of health concerns."  *Id*. at 2.  The Planning Commission found, *inter alia*, that the Proposed Facility was inconsistent with TFPP Policy VIS.2 because it "results in visual impacts" including degradation to views, and that it was incompatible with other TFPP provisions and various provisions of the Marin County Code.  *Id*. at 4-8.

Plaintiff appealed the decision by the Planning Commission to the County Board of Supervisors.  Dkt. No. 41-37 at 1.  On October 8, 2020, ahead of the Board of Supervisors hearing, plaintiff submitted further photo simulations, *id*. at 8, as well as new engineering drawings for the

United States District Court
Northern District of California

5

monopine alternatives.  Dkt. No. 41-47.

At the October 13, 2020, Board of Supervisors hearing, County Staff testified that "the design of the [12'x12' wide by 33' tall] project is incompatible with the development of the site, as well as the surrounding neighborhood . . . I want to remind the Board that consideration of aesthetics and denial of an application for wireless facility is a legitimate ground to make a decision."  Dkt. No. 41-50 at 8:5-8 (Board of Supervisors Meeting transcript).  In addition, County Staff testified that, ". . . aesthetics are particularly important, blocking views from private properties, surrounding is particularly important.  The whole level of analysis was particularly important in residential zones because that is the lowest [priority] of the priority areas. That's not to say that it's impossible to ever build within a residential zone, but you have to be particularly careful about how you're going about that. We don't feel like AT&T has met that standard."  *Id.* at 12:4-14.  With regard to the alternatives, County Staff stated, "during the review process, the application was revised three times.  Each revision is incomplete, doesn't – each revision did not include any kind of technical studies that would be needed in order to review the application and render or make a recommendation to the DZA, to the Planning Commission, or to the Board.  With that in mind, again I will reiterate the subject of the appeal is the project that was denied by the Planning Commission, and the alternative projects that the applicants mentioned in his presentation are substantially incomplete.  With any of our submittal requirements."  *Id*. at 39:18-40:5.

On October 26, 2020, the County Board of Supervisors ("Board") issued its written denial of plaintiff's Application in the form of Denial Resolution No. 2020-113.  Dkt. No. 41-45 at 8.  The Denial Resolution states that the "applicant submitted a revised project to the Marin County Deputy Zoning Administrator at the hearing for consideration and to the Planning Commission two days prior to the hearing without the required technical studies for evaluation, including but not limited to photo-simulations, radiofrequency report, and noise analysis," and that "the revised projects the applicant submitted are not the subject matter of this appeal."  *Id.* at 1.  The Denial Resolution stated that the Proposed Facility was inconsistent with the TFPP because, *inter alia*,

> The TFPP states that wireless telecommunications facilities should be sited to avoid or minimize land use conflicts.  The TFPP policies establish a general preference for

non-residential sites for wireless facilities.   TFPP policy LU 1.4 ranks location preferences in seven categories:

1.  Industrial sites

2.  Commercial sites

3.  Public facilities sites

4.  Agricultural sites

5.  Mixed use sites

6.  Open space and recreational sites

7.  Residential sites

The preferred priority location for placement of wireless facility is based on sites, rather than zoning districts.  The site for the proposed wireless facility is developed with a church, which is an institutional use similar to public facilities and commercial sites in terms of preferences, but there is nothing in the record to demonstrate that commercial properties are unavailable and/or technically infeasible.  However, the design of the proposed project itself is inconsistent with the goals and policies contained in the TFPP.  Specifically, the appellants failed to evaluate other design alternatives, such as a monopole structure or attachment to the existing church steeple, which would potentially provide the least intrusive design. . . .

. . .

Visual and aesthetic compatibility policies VIS 1 and 2 specify that telecommunications facilities should be sited and designed to avoid or minimize adverse visual effects.  The TFPP also encourages stealth design to minimize visual effects.  The project is not sited, nor designed, in a manner to avoid or minimize adverse visual impacts.  The story-pole demonstrates that the proposed bell tower would be prominently visible from Bayview Drive (north) and the residences to the north, unlike the narrower church steeple located a mere few feet away from the proposed structure.  In addition, views to the south, southwest and southwest [sic] would be impaired.

*Id*. at 6-7.

## II.     Procedural background

On November 11, 2020, AT&T filed this lawsuit alleging three causes of action under the Telecommunications Act of 1996 (the "TCA") against defendant County of Marin.  AT&T alleges that the County's denial of its application for a use permit to allow for construction and operation of a wireless communications facility violates Section 332 of the TCA because: (I) the County's denial effectively prohibits AT&T from closing a significant coverage gap in the provision of wireless service in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II); (II) the County's denial was not

7

supported by substantial evidence contained in a written record in violation of 47 U.S.C. § 332(c)(7)(B)(iii); and (III) the County improperly regulated the placement, construction, and modification of personal wireless service facilities on the basis of environmental effects of radio frequency emissions in violation of 47 U.S.C. § 332(c)(7)(B)(iv).  Compl. at ¶¶ 57-80 (Dkt. No. 1).

On January 8, 2021, the County moved to dismiss the complaint.  The County contended that the complaint was "unripe, as a matter of law, because AT&T failed to pursue a less intensive, faux tree [monopine], alternative wireless antenna design before filing this lawsuit."  Dkt. No. 22 at 1.  In response, AT&T argued that "this action is based on the County's denial of AT&T's application for the [12'x12' wide by 33'5" tall] bell tower design" and that "[t]he County's decision on the bell tower application (the only application that AT&T is advancing in this action) is final, and AT&T's causes of action for denial of the bell tower application are ripe."  Dkt. No. 23 at 2-3. The Court agreed with AT&T that its challenge to the denial of the 12'x12' wide by 33'5" tall bell tower design was ripe because "plaintiff is challenging a final decision denying plaintiff's Application to construct the bell tower design. While plaintiff never perfected a new application to the County for one of its faux pine-tree designs, the bell tower design was denied by the County at each level of the administrative process."  Order at 7 (Dkt. No. 33).

The parties have stipulated that Counts II and III can be decided based on the administrative record found at Dkt. No. 41.  Now before the Court are the parties' cross-motions for partial summary judgment on Counts II and III.[5]

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) governs summary judgment, which is proper when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Because the parties have stipulated to resolving Counts II and III based on the administrative record, the "Court is not required to resolve any facts in a review of an administrative proceeding" but rather shall "determine whether or not as

---

[5] Plaintiff did not move for summary judgment on Count III, and at the hearing conceded that it was abandoning that cause of action.

United States District Court
Northern District of California

a matter of law the evidence in the administrative record permitted the agency to make the decision it did."  *Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 769-70 (9th Cir. 1985); *see also California RSA No. 4 v. Madera Cty.*, 332 F. Supp. 2d 1291, 1301 (E.D. Cal. 2003) (applying *Occidental* standard to review of local government's denial of conditional use permit).

## DISCUSSION

## I.  Count II – Substantial Evidence (47 U.S.C. § 332(c)(7)(B)(iii))

AT&T contends that the Board's denial is not supported by substantial evidence because the Proposed Facility was a "stealth structure" that would be minimally visible from most vantages. AT&T asserts that the Proposed Facility complied with the TFPP because no tower, antennas or other telecom equipment would be visible and instead would be concealed entirely within the bell tower.  AT&T also asserts that the Board's findings about possible alternatives are not supported by substantial evidence because AT&T explored other locations and options, including the monopine design, and that to the extent that the County believes that an alternative design presented by AT&T was less intrusive, the County was required to conditionally approve that design.

### A.  Substantial evidence standard

The TCA provides that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record."  47 U.S.C. § 332(c)(7)(B)(iii).  "The party seeking to overturn the local government's decision carries the burden of showing the decision was not supported by substantial evidence."  *Voice Stream PCS I, LLC v. City of Hillsboro*, 301 F. Supp. 2d 1251, 1256 (D. Or. 2004); *see also Am. Tower LP v. City of Huntsville*, 295 F.3d 1203, 1207 (11th Cir. 2002).

"The most authoritative and oft-cited elaboration of the TCA's substantial evidence standard comes from the Second Circuit in *Oyster Bay*, where the court explained that 'substantial evidence' implies 'less than a preponderance, but more than a scintilla of evidence.'"  *MetroPCS, Inc. v. City & Cty. of San Francisco*, 400 F.3d 715, 725 (9th Cir. 2005) (quoting *Cellular Tel. Co. v. Town of*

United States District Court
Northern District of California

*Oyster Bay*, 166 F.3d 490, 495 (2d Cir. 1999)).[6]  As set forth in *Oyster Bay*, the substantial evidence standard is "deferential" and courts can "neither engage in [their] own fact-finding nor supplant the Town Board's reasonable determinations."  *Oyster Bay*, 166 F.3d at 494; *MetroPCS*, 400 F.3d at 725.  "[T]he substantial evidence inquiry does not require incorporation of the substantive federal standards imposed by the TCA, but instead requires a determination whether the zoning decision at issue is supported by substantial evidence in the context of applicable state and local law."  *MetroPCS*, 400 F.3d 723-24; *see also Am. Tower Corp. v. City of San Diego*, 763 F.3d 1035, 1053 (9th Cir. 2014) ("We must take applicable state and local regulations as we find them and evaluate the City decision's evidentiary support (or lack thereof) relative to those regulations.").  A defendant need only show substantial evidence for one reason for denial, in view of the local regulations, rather than for each reason for denial.  *Charter Commc'ns, Inc. v. County of Santa Cruz*, 304 F.3d 927, 933 (9th Cir. 2002) ("Under this deferential standard, the County's denial of consent should be upheld as long as there is substantial evidence for any one sufficient reason for denial.").  "The upshot is simple: this Court may not overturn the Board's decision on 'substantial evidence' grounds if that decision is authorized by applicable local regulations and supported by a reasonable amount of evidence (i.e., more than a 'scintilla' but not necessarily a preponderance)."  *MetroPCS*, 400 F.3d at 725.

### B.    Aesthetic concerns

"Under the TCA, the board is entitled to make an aesthetic judgment as long as the judgment is 'grounded in the specifics of the case,' and does not evince merely an aesthetic opposition to cellphone towers in general."  *Voice Stream PCS I*, 301 F. Supp. 2d at 1258.  "Accordingly, when the evidence specifically focuses on the adverse visual impact of the tower at the particular location at issue more than a mere scintilla of evidence generally will exist."  *Id.*; *see also T-Mobile USA, Inc. v. City of Anacortes*, 572 F.3d 987, 994-95 (9th Cir. 2009) (citing *Voice Stream* and stating that aesthetics are among "legitimate concerns for a locality"); *see also Preferred Sites, LLC v. Troup*

---

[6]  *MetroPCS* was abrogated on other grounds by *T-Mobile S., LLC v. City of Roswell, Ga.*, 574 U.S. 293 (2015).

United States District Court
Northern District of California

*Cty.*, 296 F.3d 1210, 1219 (11th Cir. 2002) ("mere generalized concerns regarding aesthetics are insufficient to constitute substantial evidence").

AT&T argues that the Board of Supervisors' denial based on aesthetic considerations is not supported by substantial evidence because "the record shows the proposed stealth structure would be minimally visible from most vantages, though some neighbors could see it." AT&T's Mtn. at 10 (Dkt. No. 43). Plaintiff argues that the Proposed Facility is consistent with the definition of "stealth design" as included in Marin County Code § 22.130: "[a] telecommunications facility that is designed or located in such a way that the facility is not readily recognizable as telecommunications equipment." AT&T also argues that the Proposed Facility is consistent with the TFPP, which provides that "adverse visual effects are eliminated or reduced to the maximum extent possible" (VIS 1), facilities are "designed and built in a manner which minimizes visual effects to surrounding areas" (VIS 2), "[s]tealth design techniques can reduce land use conflicts" by integrating the facility into "existing or proposed" structures" (at IV-5 of TFPP), and states that stealth designs are "[o]ne of the most successful techniques for minimizing or avoiding visual impacts" (at IV-21 of TFPP).

AT&T contends that there is no substantial evidence to support the Board's statement in the Denial Resolution that "[t]he story-pole demonstrates that the proposed bell tower would be prominently visible from Bayview Drive (north) and the residences to the north, unlike the narrower church steeple located a few feet away from the proposed structure." Plaintiff asserts that at least one photo of the story poles is "significantly zoomed" and thus misleading as not actually representing an actual view of a resident (*e.g.*, being zoomed in at a particular location). Dkt. No. 43 at 10, referencing Dkt. No. 41-37 at 22 (photograph of story poles with the San Rafael Bridge in the background). AT&T also argues that "the County's denial of the Application, while citing purported generalized aesthetic concerns, came after numerous residents testified about their concerns with radio frequency emissions." Dkt. No. 39 at 5; *see also* Dkt. No. 41-43 of the Administrative Record.

AT&T argues that this case is similar to *California RSA No. 4 v. Madera County*, in which Verizon Wireless successfully challenged a county's denial of a conditional use permit to build four 30 feet high antennae near an existing large water tank. The court held that the "denial based on

11

aesthetic concerns is not supported by substantial evidence" where the antennas to be installed "were two inches in diameter at the top, largely invisible to persons situated at the north, northeast and northwest of the water tank," and trees and brush provided screening. *Cal. RSA No. 4*, 332 F. Supp. 2d at 1309, 1306.  The court also found that the "over-arching presence of the concededly ugly and massive water storage tank," which "dominates the scene," rendered the aesthetic objections "without factual foundation and [] tantamount to speculative and generalized concerns." *Id.* at 1308-09.  AT&T also relies on *Oyster Bay*, wherein the court found that residents' comments "did not articulate specifically how the proposed cell sites would have an adverse aesthetic impact on the community" and that "a few comments suggested the residents who expressed aesthetic concerns did not understand what the proposed cell sites would actually look like." *Oyster Bay*, 166 F.3d at 495.

The County asserts that there is substantial evidence to support the Board's denial and finding that the 12'x12'x33'5" tall bell tower design was inconsistent with the TFPP and the Marin County Code.  The County argues that the Proposed Facility does not minimize visual impacts, as required by TFPP policies VIS 1 and VIS 2, nor is it consistent with the TFPP's guidance on "stealth designs," *see*, *e.g.*, TFPP at IV-23 ("Sometimes a component of a building can he replaced or modified to conceal antennas with little or no change in the visual character of the building. For example, in an historic residential neighborhood, an entire existing church steeple could be replaced with a fiberglass one to conceal a cellular omni antenna.").  The County also cites to Marin County Code Section 22.42.060, asserting that subsections A (discretionary development standards), B (architectural design incompatible with surroundings and community), C (project would eliminate primary views and vistas), and E (project degrades views of natural features) were not satisfied by the bell tower design.  Dkt. No. 42 at 9; *see also* Marin County Code § 22.42.060(A)-(E).

The County argues that AT&T's own photo simulation shows that the Proposed Facility did not bring about "little or no change in the visual character in the building," but rather brought about a profound change to the façade of the church.  Further, the County argues that the numerous objections from neighbors, accompanied by photographs of the story poles, demonstrate that the Proposed Facility would be prominently visible from Bayview Drive and to the residences on the

north, incompatible with the surrounding neighborhood, and that it would negatively impact residents' views.

The Court concludes that under the deferential standard set forth in *MetroPCS* and *Oyster Bay*, there is substantial evidence to support the Board's finding that "[t]he story-pole demonstrates that the proposed bell tower would be prominently visible from Bayview Drive (north) and the residences to the north, unlike the narrower church steeple located a few feet away from the proposed structure," and thus that the Proposed Facility was inconsistent with the TFPP and MCC standards regarding visual impact and/or aesthetics.  The administrative record is replete with objections from residents about the negative visual impact of the Proposed Facility, including with photographs showing the story poles.  This evidence includes, *inter alia*, statements that the "bell tower . . . swallows 20% of the view of the water" (with photograph, Dkt. No. 41-9 at 15-17); "this tower will dominate the view of the church . . . blocks the ridgeline view" (with photograph, Dkt. No. 41-43 at 455-457); "[t]he story poles, clearly visible from that vantage point, portray a huge, dominating, block-like tower . . . (with photograph, Dkt. No. 41-43 at 505); "the story poled rendition . . . can be seen from many properties and blocks otherwise nice bay views . . . " (with photographs, Dkt. No. 41-21 at 4-7); "as the temporary black scaffolding [story poles] shows, the proposed 'clock tower' will obstruct our bay view on the left" (Dkt. No. 41-43 at 25); "the project is readily visible from various public views and does not fit in with the aesthetics of our community" (Dkt. No. 41-43 at 27); "this proposed tower, even in its reduced size, will ruin my last remaining view of the bay" (Dkt. No. 41-43 at 42); "this very obtrusive structure is not fitting in a residential neighborhood" (Dkt. No. 41-43 at 52); "this application is unsightly, enormous and unreasonable aesthetically . . . [i]ts design is wildly uncontextual [sic]" (Dkt. No. 41-43 at 60); "visible eyesore to our community" (Dkt. No. 41-43 at 64); "clearly obstructs various public and private property views, including my water view and the water views of several neighbors . . ." (Dkt. No. 41-42 at 69, with photographs at 74-80); "[t]his is a huge obstruction of my view from my property . . ." (Dkt. No. 41-43 at 157); "[t]his option seems the worst possible. Something so large and unsightly should be behind homes, not in front of them. It should be in a commercial area, not a residential area." (Dkt. No. 41-43 at 197); "the project will . . . compromise our view" (Dkt. No. 41-43 at 225);

1    and  "[t]he cell tower obstructs my view of the water. A huge [] draw to purchasing my home last

2    September was the views/proximity to the water" (Dkt. No. 41-43 at 757).

3            The numerous objections and photographs are not "generalized aesthetic concerns" but

4    evidence of the specific detrimental visual impact of the Proposed Facility on the neighboring

5    residential community.  This is similar to the evidence found sufficient in *T-Mobile USA, Inc. v.*

6    *City of Anacortes*, 572 F.3d 987, 994-95 (9th Cir. 2009) ("A number of residents claimed that the

7    monopole would have a detrimental impact on the surrounding residential property, that the pole

8    would not be completely screened, and that it would interfere with residents' views of the Cascade

9    Mountains and other scenic views.  This evidence is 'more than a scintilla of evidence,' and

10   accordingly the district court should have deferred to the City's determination that the evidence was

11   adequate to support its denial of the application under the AMC."); *see also Sprint PCS Assets,*

12   *L.L.C. v. City of Palos Verdes Estates*, 583 F.3d 716, 726 (9th Cir. 2009) (finding that the denial

13   was supported by substantial evidence and that "one could reasonably determine, as the City did,

14   that the [facility] would detract from the residential character of the neighborhood and that the

15   [facility] would not be in keeping with the appearance of that main entrance to the City"); *cf. Cal.*

16   *RSA No. 4*, 332 F. Supp. 2d at 1308-09 ("The few objections of the neighbors living near the site

17   amount to assertions of aesthetic intrusion or degradation.  In view of the over-arching presence of

18   the concededly ugly and massive water storage tank, which predated the building of all the homes

19   concerned in this discussion, these assertions regarding several small antennae are without a factual

20   foundation and are tantamount to speculative and generalized concerns.").

21           The Court is not persuaded by AT&T's arguments that the County's denial was based on

22   residents' concerns about RF emissions, as at every stage of the administrative process the

23   decisionmakers explicitly stated that the denial was not based on those concerns.  Nor does the fact

24   that certain photos in the record are "zoomed" detract from the other evidence in the record showing

25   that the Proposed Facility would impede residents' views.

26

27           **C.    Alternatives**

28           AT&T asserts that the County's findings regarding possible alternatives are not supported

United States District Court
Northern District of California

1    by substantial evidence, and that the County "was required to conditionally approve" an alternative

2    design if the County "believes one of the alternative designs presented by AT&T was less intrusive."

3    AT&T's Mtn. at 13-15.   AT&T challenges the Board's finding "there is nothing in the record to

4    demonstrate that commercial properties are unavailable and/or technically infeasible," and that

5    "[t]he applicant did not demonstrate that other technically feasible and potentially available design

6    alternatives" – such as a monopole-type design or attachments to the existing steeple – would not

7    be less visually intrusive.   AT&T argues that the County refused to consider the alternatives that it

8    proposed, such as the 4'x4' wide and 44' tall clock tower design or the monopole design, and that

9    the denial of the Proposed Facility and refusal to consider alternatives has resulted in effective

10   prohibition in violation of the TCA.

11        The County contends that the DZA did consider the 4'x4' wide by 44' tall clock tower design

12   but rejected it as impairing views, and that AT&T never submitted complete applications for any

13   alternative designs, including the clock tower or monopine design.   The County also argues that the

14   substantial evidence inquiry is limited to reviewing whether the Board's denial is consistent with

15   applicable state and local law, and that to the extent AT&T raises arguments about effective

16   prohibition, those issues are relevant to Count I, not Count II.

17        The Court agrees with the County.   Much of AT&T's arguments about alternatives rely on

18   cases interpreting "effective prohibition" law under 47 U.S.C. § 332(c)(7)(B)(i)(II) and its "least

19   intrusive means" test, *see e.g.*, AT&T's Mtn. at 14-16.   Count I of the complaint alleges that the

20   County's denial has effectively prohibited AT&T from providing wireless services; those arguments

21   are misplaced in the context of the present motions involving Counts II and III.   The substantial

22   evidence inquiry is focused on determining whether "the zoning decision at issue is supported by

23   substantial evidence in the context of applicable state and local law," while the effective prohibition

24   analysis "involves a two-pronged analysis requiring (1) the showing of a 'significant gap' in service

25   coverage and (2) some inquiry into the feasibility of alternative facilities or site locations."

26   *MetroPCS, Inc.*, 400 F.3d at 723-24, 731; *see also e.g.*, *City of Anacortes*, 572 F.3d at 993, 995-96

27   (holding there was substantial evidence to support the denial of a use permit based on aesthetic

28   concerns, but that the denial violated the TCA because the City failed to rebut the showing of a lack

1    of available and feasible alternative sites).

2            AT&T argues in its reply that the consideration of less intrusive designs or alternatives is

3    part of the County's application review under the TFPP, and AT&T notes that the Board concluded

4    that the proposed bell tower was inconsistent with the TFPP because "[s]pecifically, the appellants

5    failed to evaluate other design alternatives, such as a monopole structure" that "would potentially

6    provide the least intrusive design."  The Court finds that to the extent AT&T is challenging the

7    Board's finding as a factual matter, there is substantial evidence to support the Board's findings.

8    The record shows that AT&T never submitted a complete application for the monopole structure,

9    and that AT&T never pursued the alternative design of attaching the facility to the church steeple.

10   AT&T submitted incomplete alternative proposals on the day of the DZA hearing (the taller,

11   skinnier clock tower design) and several days before the Board of Supervisors hearing (the

12   monopine design).  AT&T has not cited any state or local law requiring the Board to evaluate

13   incomplete designs, or to conditionally approve incomplete alternatives.  To the extent that AT&T

14   contends that there were no other feasible alternatives and that its Proposed Facility is the only

15   option to close its service gap, those arguments are directed at whether the denial constitutes an

16   effective prohibition under Count I, and AT&T can pursue those arguments in the remainder of this

17   litigation.

18            In sum, the Court concludes that there is substantial evidence to support the County's denial

19   of the Application and GRANTS summary judgment in favor of the County on Count II.

20

21   **II.       Count III –Radio Frequency Emissions (47 U.S.C. § 332(c)(7)(B)(iv))**

22            The third cause of action alleges that the Board denied AT&T's use permit on the basis of

23   environmental effects of radio frequency emissions in violation of 47 U.S.C. § 332(c)(7)(B)(iv).

24   That statute provides, "[n]o State or local government or instrumentality thereof may regulate the

25   placement, construction, and modification of personal wireless service facilities on the basis of the

26   environmental effects of radio frequency emissions to the extent that such facilities comply with the

27   [Federal Communication] Commission's regulations concerning such emissions."   47 U.S.C.

28   § 332(c)(7)(B)(iv); *see also AT&T Wireless Servs. of Cal. LLC v. City of Carlsbad*, 308 F. Supp. 2d

*United States District Court*
*Northern District of California*

16

1    1148, 1159 (S.D. Cal. 2003) (decision cannot be "directly or indirectly" based on the environmental

2    effects of RF emissions).

3        The County moved for summary judgment on Count III, asserting that there is no evidence

4    in the record that the Board based its denial on RF emissions concerns as opposed to aesthetics.

5    AT&T did not move for summary judgment on this cause of action, and at the hearing AT&T

6    conceded that summary judgment in defendant's favor was appropriate.  Dkt. No. 49 (Hearing

7    Minutes).

8        The Court concludes that the County is entitled to summary judgment on this cause of action

9    for the reasons stated by the County and as conceded by AT&T.  The Board's denial resolution

10    states, "Federal law prohibits cities and counties from considering radiofrequency ('RF') emissions

11    as a basis for denying or regulating wireless facilities if (as is the case here) the applicant has

12    demonstrated that the proposed wireless facility complies with the Federal Communications

13    Commission's (FCC) RF emissions regulations." Dkt. No. 41-45 at 2.  Although the record contains

14    evidence that members of the public raised concerns about RF emissions, there is no evidence

15    suggesting that the Board based its denial on those concerns.  Accordingly, the Court GRANTS

16    summary judgment in favor of the County on Count III.

17

18                         **CONCLUSION**

19        For the foregoing reasons, the Court GRANTS defendant's motion for partial summary

20    judgment on Counts II and III and DENIES plaintiff's motion for partial summary judgment.

21

22        **IT IS SO ORDERED**.

23

24    Dated: November 18, 2021           _____

25                       SUSAN ILLSTON
                       United States District Judge

26

27

28

United States District Court
Northern District of California